**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SAMUEL PRABIR, on behalf of himself and**
**others similarly situated,**

 **Plaintiff,**

 **v.**

 No. 17-cv-3704

**BUKHARA INDIAN CUISINE, INC. d/b/a**
**INDIGO INDIAN BISTRO, BASERA INDIAN**
**CUISINE, INC. d/b/a BASERA RESTAURANT,**
**ANIL KUMAR and RENU KUMAR,**

 **Defendants.**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER OF**
**ATTACHMENT**

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum, Esq.
Lucas C. Buzzard, Esq.
32 Broadway, Suite 601
New York, New York 10004
(212) 688-5640

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.  BACKGROUND & PLAINTIFFS' CLAIMS ........................................................... 2

III. ARGUMENT ............................................................................................................ 9

   A.  Prejudgment Attachment Standard ................................................................. 4

   B.  It is "Probable" that Plaintiffs Will Succeed on the Merits of their FLSA and NYLL
       Claims. .......................................................................................................... 5

           1.  Plaintiffs' Evidence Demonstrates That They Will Succeed on the Merits of
               Their Two Largest Claims – Misappropriation of Gratuities and Overtime
               Violations ................................................................................................ 6

           2.  Plaintiffs Will Succeed on the Merits of their Remaining NYLL Claims ........ 13

   C.  Plaintiffs' Evidence Demonstrates Defendants' Intent to Defraud or Frustrate the
       Enforcement of this Action ........................................................................... 16

   D.  Attachment is Necessary Because Defendants are Deliberately Rendering Themselves
       Judgment Proof ............................................................................................. 20

   E.  The Amount Demanded Exceeds All Known Counterclaims ........................... 20

   F.  Plaintiffs Will Provide an Undertaking ........................................................... 21

   G.  The Court Should Permit Plaintiffs to Conduct Discovery of Defendants' Assets ......... 22

IV.  CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Amaya v. Superior Tile and Granite Corp.*, No. 10-cv-4525 (PGG),
    2012 U.S. Dist. LEXIS 5246 (S.D.N.Y. Jan. 17, 2012) ...................................... 11,12

*Bank Leumi Trust Co. of New York v. Istim, Inc.*, No. 14-cv-3624,
    892 F. Supp. 478 (S.D.N.Y. 1995) ...................................................................... 6

*Barenboim v. Starbucks Corp*,
    21 N.Y.3d 460 (N.Y. 2013) .................................................................................. 6

*Capital Ventures Int'l v. Rep. of Argentina*,
    443 F.3d 214 (2d Cir. 2006) ................................................................................ 4,5,8

*CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-cv-5345 (AJN),
    2016 U.S. Dist. LEXIS 82821 (S.D.N.Y. June 24, 2016) ................................... 16-17

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) ............................................................... 4,5,16

*Etalon Imob S.R.L. v. Schoenbach*, No. 12-cv-6868 (BSJ),
    2012 U.S. Dist. LEXIS 144005 (S.D.N.Y. Oct. 3, 2012) ................................... 22

*Garden City Irrigation, Inc., v. Donna Salamanca*, No. 13304-04 (table),
    2005 N.Y. Misc. LEXIS 784 (N.Y. Sup. Ct. Apr. 18, 2005) .............................. 21

*Heller Financial, Inc. v. Wall Street Imports, Ltd.*,
    529 N.Y.S.2d 969, 970-71 (N.Y. Sup. Ct. 1988)…............................................ 6,7

*Herrera v. 12 Water St. Gourmet Café*, No. 13-cv-4370 (RLE),
    2016 U.S. Dist. LEXIS 25565 (S.D.N.Y. Feb. 29, 2016) ................................... 12

*Hill v. Ameritax, Inc.*, No. 16959/12,
    2012 N.Y. Misc. LEXIS 5061 (N.Y. Sup. Ct. Oct. 17, 2012)............................ 21

*In re Amaranth Natural Gas Commodities Litig.*,
    711 F. Supp. 2d 301 (S.D.N.Y. 2010) ................................................................ 21

*Jiao v. Chen*, No. 03 Civ. 0165 (DF),
    2007 U.S. Dist. LEXIS 96480 (Mar. 30, 2007) .................................................. 10

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    306 F. Supp. 2d 482 (S.D.N.Y. 2044)................................................................ 6,16

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
    622 F. Supp. 2d 98 (S.D.N.Y. 2009) ........................................................... 9

*Hertzi v. Ateliers de la Haute-Garonne*, No. 15-cv-7702 (RJS),
    2015 U.S. Dist. LEXIS 165258 (S.D.N.Y. Oct. 13, 2015) ................................. 22

*Marklin v. Drew Properties Corp*,
    280 F. Supp. 176 (S.D.N.Y. 1967) .................................................................. 6

*McGlone v. Contract Callers, Inc.*,
    49 F. Supp. 3d 364 (S.D.N.Y. 2014) .............................................................10

*New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*,
    No. 07-CIV-8008 (RJS),
    2008 U.S. Dist. LEXIS 40517 (S.D.N.Y. May 15, 2008) ...................................5,18

*Perez v. Platinum Plaza 400 Cleaners, Inc.*, 12-cv-9353 (PAC),
    2015 U.S. Dist. LEXIS 54066 (S.D.N.Y. Apr. 24, 2015)................................... 11

*Shah v. Comm. Bank "Ob'Edinennyi Investitsionny Bank"*, No. 09-cv-6121 (HB),
    2010 U.S. Dist. LEXIS 19717 (S.D.N.Y. Mar. 3, 2010) ...................................13,16

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-cv-10234 (JLC),
    2016 U.S. Dist. LEXIS 121259 (S.D.N.Y. Sept. 8, 2016) .................................. 11

**Statutes, Rules, and Regulations**

29 U.S.C. § 206 ................................................................................................ 9

29 U.S.C. § 207 ................................................................................................ 9

29 U.S.C. § 211................................................................................................ 10

N.Y. Lab. Law 195…....................................................................................... 13,14

N.Y. Lab. Law 196-d........................................................................................ 6

N.Y. Lab. Law 198…....................................................................................... 14

N.Y. Lab. Law § 661 ....................................................................................…10

N.Y. Lab. Law § 663 ....................................................................................... 9

N.Y. Comp. Codes R. & Regs. tit. 12 § 137-2.1............................................. 10

N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.............................................................. 9

N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6............................................................. 14

N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1............................................................. 10

Fed. R. Civ. P. 64 ..................................................................................................... ....2,4

N.Y. C.P.L.R. § 6212 ........................................................................................... 2,5,21

N.Y. C.P.L.R. § 6201 ............................................................................................. 5,19

N.Y. C.P.L.R. § 6220 ............................................................................................. 22

Named Plaintiff Samuel Prabir and Opt-In Plaintiffs Mustafa Bhuiyan and Sydur Rashid submit this memorandum of law in support of their Motion for an Order of Attachment against the property and debts owed to Defendants Basera Indian Cuisine, Inc., Bukhara Indian Cuisine, Inc., Anil Kumar, and Renu Kumar.

## I.      PRELIMINARY STATEMENT

This lawsuit arises from Defendants' failure to pay the Plaintiff and Opt-in Plaintiffs gratuities and overtime wages as required by the Federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), failure to pay "spread of hours" wages as required by the NYLL, and failure to provide proper wage notices and wage statements as required by the NYLL. Defendants' liability on most claims asserted in the Complaint in this matter is virtually assured – Defendant Anil Kumar, the owner of the two corporate defendants, has expressly admitted that Defendants did not distribute to Plaintiffs and other service staff any tips left by customers at one of the restaurants at issue in this lawsuit.   Defendants have also expressly admitted that neither of the restaurants involved in this lawsuit maintained time records of Plaintiffs' hours worked as required by law, which creates a rebuttable presumption that Plaintiffs' recollection of their overtime hours worked controls.  Finally, the evidence further establishes that Defendants: (1) did not pay spread of hours wages; (2) did not provide wage notices as required by N.Y. Lab. Law § 195(1); and (3) did not provide their employees with wage statements containing the information required by N.Y. Lab. Law § 195(3).

In the face of an unavoidable adverse ruling on liability, Defendants have intentionally embarked on a campaign to frustrate the enforcement of the inevitable judgment against them by encumbering their property and disposing of their assets.   Namely, the evidence submitted in support of this motion demonstrates the following chain of events: (1) Plaintiff Prabir filed this

lawsuit in May 2017; (2) in June 2017, Defendants offered for sale one of the restaurants at issue in this lawsuit, Indigo Indian Bistro; (3) from August to November 2017, Defendant Anil Kumar and other members of his family repeatedly told Sydur Rashid (now an Opt-In Plaintiff) that Defendants were going to transfer their assets "to some other relatives" and sell their businesses to avoid paying the Plaintiff in this lawsuit; (4) on October 11, 2017, Defendant Renu Kumar (Defendant Anil Kumar's wife) obtained a $329,800.00 home equity credit line mortgage on the Kumar family home in Queens; (5) at his January 25, 2018 deposition, Anil Kumar testified that Indigo had not been sold, that it remained in operation, and that there were no plans to close that restaurant; (6) less than two weeks later, on February 5, 2018, Opt-In Plaintiff Sydur Rashid discovered that contrary to Anil Kumar's deposition testimony, Indigo had been closed and was being renovated into a Japanese restaurant by "another owner"; and (7) on February 8, 2018, Defendants' counsel informed Plaintiffs' counsel that Defendants were willing to settle only for a "nominal sum" because Defendants "believe that plaintiffs will not be able to collect on any judgment that may be awarded."

For the purposes of securing funds to pay a judgment in their favor in this matter, and to prevent the further dissipation of Defendants' assets, Plaintiffs now move for a pre-judgment order of attachment in the amount of $515,819 pursuant to Fed. R. Civ. P. 64 and N.Y. C.P.L.R. § 6212.

## II.    BACKGROUND & PLAINTIFFS' CLAIMS

Defendants own and operate a family business consisting of two restaurants – Basera Indian Cuisine ("Basera") and Indigo.  Defendant Basera Indian Cuisine, Inc. owns and operates Basera. (*See* Declaration of Lucas C. Buzzard ("Buzzard Decl."), Ex. 1 (Deposition of Rajath Kumar ("Rajath Kumar Dep.")) at 12:20-13:19.)  Defendant Bukhara Indian Cuisine, Inc. owns and operates Indigo.  (*Id.* at 12:13-19.)  Defendant Anil Kumar owns both Basera Indian Cuisine,

Inc. and Bukhara Indian Cuisine, Inc. (*Id.* at 14:15-21.) He is responsible for hiring, firing, and supervising all employees at Indigo. (*Id.* at 29:2-5.) He also has authority over personnel decisions at Basera and has input into setting the wages paid at that restaurant. (*Id.* at 28:11-25.) Defendant Renu Kumar is Defendant Anil Kumar's wife. (*Id.* at 29:6-15.) She is solely responsible for signing the paychecks issued to employees at Basera. (*Id.* at 37:13-17, 38:9-39:3.) Non-party Rajath Kumar, the nephew of Anil and Renu Kumar, is the manager of both restaurants. (*Id.* at 13:20-14:11.) Non-party Rajani Rani, the niece of Anil and Renu Kumar and the sister of Rajath Kumar, is also a manager at Indigo who "takes care of all the day-to-day operations." (*Id.* at 20:7-19.)

Named Plaintiff Samuel Prabir, a former employee of Defendants who worked at both restaurants, filed the Complaint in this action on May 17, 2017. (*See* ECF Dkt No. 1 (Compl.).) The Complaint alleges that, in violation of the FLSA and the NYLL, Defendants had a policy and practice of failing to pay service employees at Indigo and Basera the proper minimum wage for each hour worked and the proper overtime premium for hours worked in excess of 40 per week. (*See id.* ¶¶ 43-60.) The Complaint also alleges the following claims under the NYLL: (1) failure to pay New York's "spread of hours" premium to service employees who worked longer than 10 hours in a day; (2) illegal deductions from gratuities, in violation of N.Y. Lab. Law § 196-d; and (3) violation of the wage notice requirements set forth in N.Y. Lab. Law § 195. (*See id.* ¶¶ 61-70.) Specifically, the Complaint alleges that Defendants did not distribute any tips left by customers to Plaintiff and other service employees, and that these employees were paid weekly salaries without any extra compensation when they worked more than 40 hours per week. (*See id.* ¶¶ 34-38.)

Plaintiff Prabir was employed by Defendants as a server and a food runner at Indigo (and for a short while at Basera) from approximately April 2015 to April 2017. (Buzzard Decl, Ex. 5 (Deposition of Prabir Samuel ("Prabir Dep.")) at 30:22-23.) Opt-In Plaintiff Mustafa Bhuiyan, who joined this action in September 2017, *see* ECF No. 19, was employed by Defendants as a server and a food runner at Basera (and occasionally at Indigo) from approximately December 2013 to October 2015. (Buzzard Decl, Ex. 7 (Deposition of Mustafa Bhuiyan ("Bhuiyan Dep.")) at 10:17-22.) Opt-In Plaintiff Sydur Rashid, who joined this action in November 2017, *see* ECF No. 29, worked for Defendants as a server and a food runner at Basera from approximately September 2012 to November 2017. (Buzzard Decl, Ex. 6 (Deposition of Sydur Rashid ("Rashid Dep.")) at 9:10-12, 12:19-21.)

## III.   ARGUMENT

### A.   Prejudgment Attachment Standard

"Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) (quotation omitted). The Federal Rules of Civil Procedure permit federal litigants to seek "every remedy available that, under the law of the state where the [federal] court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a); *see also Capital Ventures Int'l v. Rep. of Arg.*, 443 F.3d 214, 218-19 (2d Cir. 2006). To obtain an order of attachment under New York law, a plaintiff must demonstrate, "by affidavit and such other written evidence as may be submitted," that: (1) "there is a cause of action"; (2) it is "probable that the plaintiff will succeed on the merits"; (3) that "one or more grounds for attachment provided in [N.Y. C.P.L.R.] section 6201 exist"; and (4) "the amount demanded from the defendant exceeds

all counterclaims known to the plaintiff." N.Y. C.P.L.R. § 6212(a).   The relevant ground for attachment in this case is provided in N.Y. C.P.L.R. § 6201(3), which permits the prejudgment attachment of assets when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." In addition to establishing these statutory grounds for attachment exist, a plaintiff must also demonstrate that attachment is "needed" either to "secure payment or obtain jurisdiction." *Capital Ventures Int'l*, 443 F.3d at 222.

A District Court faced with a motion for prejudgment attachment has "discretion to the extent" that making the above determinations (likelihood of success on the merits, whether a ground for attachment exists, and plaintiff's need) require the "weighing of evidence" or the "balancing of competing considerations." *Id.* But where "a statutory ground for attachment exists and both need and likelihood of success are established, [a District Court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Id.*

### B. It is "Probable" that Plaintiffs Will Succeed on the Merits of their FLSA and NYLL Claims

To establish probability of success on the merits under CPLR 6212(a), Plaintiffs must show that it is more likely than not they will succeed on the merits of their claims. *DLJ Mortg. Capital, Inc.*, 594 F. Supp. 2d at 319 (citing *New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07-CIV-8008 (RJS), 2008 U.S. Dist. LEXIS 40517, at *5 (S.D.N.Y. May 15, 2008)). This requires "proof stronger than that required to establish a prima facie case." *Id.* In evaluating whether this standard has been met, however, the Court must afford Plaintiffs the benefit of all legitimate inferences that can be drawn in Plaintiffs' favor. *JSC Foreign Econ. Ass'n*

*Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004);

*Bank Leumi Trust Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995) (quoting

*Marklin v. Drew Properties Corp.*, 280 F. Supp. 176, 179 (S.D.N.Y. 1967) ("[T]he court must give

the plaintiff the benefit of all the legitimate inferences that can be drawn from the stated facts.")).

Here, Plaintiffs' evidence set forth below demonstrates that they are more than likely to succeed

on the merits of their FLSA and NYLL claims.

> 1.   Plaintiffs' Evidence Demonstrates That They Will Succeed on the Merits
>      of Their Two Largest Claims – Misappropriation of Gratuities and
>      Overtime Violations

The evidence produced in discovery demonstrates that Plaintiffs are more than likely to

succeed on the merits of their two largest claims—tip misappropriation and overtime violations.

> a)   *Tip Misappropriation*

Taking the tip misappropriation claim first, N.Y. Lab. Law § 196-d provides that "[n]o

employer or his agent . . . shall demand or accept, directly or indirectly, any part of the gratuities,

received by an employee, or retain any portion of a gratuity or of any charge purported to be a

gratuity for an employee." N.Y. Lab. Law § 196-d. This provision "was intended to end the unfair

and deceptive practice of an employer retaining money paid by a patron under the impression that

he is giving it to the employee, not the employer." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460,

469 (N.Y. 2013) (internal quotation marks omitted).

Here, Defendants violated § 196-d by retaining *all* gratuities left by customers at both of

their restaurants. Plaintiffs have testified that Defendants retained all tips left by customers at both

Indigo and Basera, and did not distribute any of those tips to service employees, at least until the

spring of 2017.[1]  *See* Bhuiyan Dep. at 24:19-25:4; Rashid Dep. at 24:13-18; Prabir Dep. at 39:24-40:3, 42:6-10, 61:14-16.   Defendant Anil Kumar expressly admitted to this practice at Indigo, confirming in his deposition that no portion of gratuities left by customers at Indigo were distributed to the service staff:

> Q:   What happens to the tips left by customers at Indigo?
> A:   We used to keep it.
> Q:   The restaurant used to keep it?
> A:   Yes.
> Q:   Did any part of that tip left by the customers get paid to Mr. Prabir Samuel or other servers or waiters at the restaurant?
> A:   No.

(Buzzard Decl., Ex. 2 (Deposition of Anil Kumar ("A. Kumar Dep.")) at 41:4-13.)   Thus, the undisputed evidence demonstrates that Defendants' liability for tip misappropriation at Indigo is virtually assured.

With respect to Basera, Defendants' witness Rajath Kumar testified that service employees at that restaurant were paid tips in addition to the hourly minimum wage.   (*See* Rajath Kumar Dep. at 56:12-17.)   While this testimony may create a dispute of fact as to whether Defendants distributed tips at Basera, it is probable that Plaintiffs will prevail on this issue at trial because Rajath Kumar's testimony is simply not credible.   First, as Rajath Kumar acknowledged, Defendants' payroll documents from Basera purportedly show that Plaintiff Bhuiyan received the *same amount in tips each and every week* he worked—$440 per week in 2014 and $410 per week in 2015.   (*See* Buzzard Ex. 8 (Bhuiyan Payroll Records); Rajath Kumar Dep. at 65:10-66:7.)   When asked how the amount of tips paid to Mr. Bhuiyan was calculated, however, Rajath Kumar testified that it depended on "how many tables come in per your shift, how many

---

[1] Plaintiff Rashid testified that Defendants began paying servers tips in "March or April of 2017." (Rashid Dep. at 24:16-18.)   For purposes of this motion, Plaintiffs are addressing only the tip misappropriation that occurred before that change.

customers pay with tips and then you add them up and then at the end of the week you give him per shift the total amount."  (Rajath Kumar Dep. at 71:19-72:25.)  It is simply improbable that a jury would believe that the weekly tips left by a varying number of customers somehow added up to $440 each week in 2014 and then, for some inexplicable reason, that changed the first week of 2015 and customers left tips adding up to $410 each week that year.  It is much more likely that a jury would believe, as Anil Kumar testified, that employees at Basera (like those at Indigo) were paid "a weekly salary" that did not include tips.  (Anil Kumar Dep. at 63:10-16.)  For these reasons, it is more likely than not Plaintiffs will establish Defendants' liability for tip misappropriation at Basera as well.  *See Capital Ventures Int'l*, 443 F.3d at 222 (District Courts have discretion to "weigh evidence" when faced with attachment motion).

Customers at Basera left approximately $200 to $400 in credit card tips per day, plus an unknown amount of cash tips.  (Rashid Dep. at 32:21-33:24.)  There were approximately four waiters at Basera who should have received those tips each day.  (A. Kumar Dep. at 62:16-21.)  Accordingly, assuming that Basera made an average of $350 in tips per day (midpoint of $200 and $400, plus an additional $50 in cash tips), each server should have received approximately $87.50 in tips per day or $525 in total tips for a 6-day week.  At Indigo, customers left approximately $300 to $500 in tips per day, *see* Prabir Dep. at 40:4-10, and two or three servers worked each day, *see* A. Kumar Dep. at 19:15-20:4.  Thus, assuming that Indigo made an average of $400 in tips per day (midpoint of $300 and $500) and there were generally three servers, each server should have received approximately $133.33 in tips per day, or $800 in tips per 6-day week.  As set forth in the

margin, using these numbers, Plaintiffs estimate that Defendants will be liable for approximately $245,397 in compensatory damages for misappropriated tips.[2]

> *b)  Overtime Claims*

Turning to Plaintiffs' FLSA and NYLL overtime claims, both the FLSA and the NYLL entitle employees to a minimum hourly wage and a premium of 1.5 times their regular hourly rate for all hours worked in excess of 40 hours per week.  29 U.S.C. §§ 206, 207(a)(1); N.Y. Lab. Law § 663; N.Y. Comp. Codes R. & Regs. tit. 12 ("NYCRR") § 142-2.2.  To prevail on their overtime claim, Plaintiffs must demonstrate that they were not properly paid for overtime hours actually worked.  *See Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009).

With respect to hours worked, all Plaintiffs testified that they worked at least 10 to 12 hours per day, six days per week.  (*See* Rashid Dep. at 11:9-11 (worked six days per week at Basera), 16:3-9 (generally worked from 11:00a.m. to 11:00p.m.), 19:20-24 (weekend schedule changed to

---

[2]

| Name | Year | Estimated Weeks worked in Period | Days Worked Per Week | Tips Per Day | Tips Owed Per Week | Tips Owed for Period | Totals |
|---|---|---|---|---|---|---|---|
| Prabir (Indigo) | 2015 | 36 | 6 | $133.33 | $799.98 | $28,799.28 | |
| | 2016 | 50 | 6 | $133.33 | $799.98 | $39,999.00 | |
| | 2017 | 16 | 6 | $133.33 | $799.98 | $12,799.68 | **$81,597.96** |
| Bhuyian(Basera) | 2014 | 50 | 6 | $87.50 | $525.00 | $26,250.00 | |
| | 2015 | 42 | 6 | $87.50 | $525.00 | $22,050.00 | **$48,300.00** |
| Rashid (Basera) | 2012 | 16 | 6 | $87.50 | $525.00 | $8,400.00 | |
| | 2013 | 50 | 6 | $87.50 | $525.00 | $26,250.00 | |
| | 2014 | 50 | 6 | $87.50 | $525.00 | $26,250.00 | |
| | 2015 | 50 | 6 | $87.50 | $525.00 | $26,250.00 | |
| | 2016 | 38 | 6 | $87.50 | $525.00 | $19,950.00 | |
| | 2017 | 16 | 6 | $87.50 | $525.00 | $8,400.00 | **$115,500.00** |
| | | | | | | TOTAL | **$245,397.96** |

1:00p.m. to 11:00p.m. in 2014); Prabir Dep. at 16:22-18:22 (worked at Indigo from 11:00a.m. to

at least 11:00p.m., six days per week); Bhuiyan Dep. at 16:2-3 (worked six days per week at

Basera), 31:17-25 (worked at Basera from 11:00a.m. to 11:00p.m. on weekdays and 1:00p.m. to

11:00p.m. on weekends).)  Thus, Plaintiffs have introduced evidence that they generally worked

at least 60 to 72 hours per week, which amounts to overtime of 20 to 32 hours per week.

Defendants will inevitably argue that Plaintiffs did not work all of these hours because they

received a two-hour break from 3:00p.m. to 5:00p.m. each weekday (Plaintiffs contend that this

break was illusory and they actually had to perform work).  But Defendants have admitted that

they did not create or maintain employee time records, written schedules, or sign in/sign out sheets

at either restaurant.  (*See* Rajath Kumar Dep. at 56:12-58:6, 60:13-15 (discussing Basera); A.

Kumar Dep. at 33:3-14 (discussing Indigo).)  Employers are required to create and maintain such

records under both the FLSA and NYLL.  29 U.S.C. § 211(c); 29 C.F.R. § 516.2; N.Y. Lab. Law

§ 661; 12 N.Y.C.R.R. §§ 137-2.1, 146-2.1. "[I]f an employer keeps inaccurate or inadequate

records, the plaintiff need only offer a reasonable estimate of his damages." *McGlone v. Contract

Callers, Inc.*, 49 F. Supp. 3d 364, 370–71 (S.D.N.Y. 2014).  "Once the employee has offered his

estimate, the burden then shifts to the employer to come forward with evidence of the precise

amount of work performed or with evidence to negate the reasonableness of the inference to be

drawn from the employee's evidence." *Id.*  "If the employer fails to produce such evidence, the

court may then award damages to the employee, even though the result may be approximate." *Jiao

v. Chen*, No. 03 Civ. 0165 (DF), 2007 U.S. Dist. LEXIS 96480, at *9 (S.D.N.Y. Mar. 30,

2007) (internal citation omitted).  Thus, because Defendants will bear the burden of establishing

at trial the precise amount of work Plaintiffs performed, it is likely that Plaintiffs' will prevail on the number of hours they worked.[3]

With respect to whether they were properly paid for their overtime, Plaintiffs have introduced evidence that at both Indigo and Basera they were paid flat weekly salaries ranging from $250 to $675 per week.  *See* Prabir Dep. at 23:12-13 (starting salary of $250 per week at Indigo), 46:24-47:4 (discussing salary changes from $250 to $500 at Indigo); Bhuiyan Dep. at 15:4-19 (salary of $550 per week at Basera); Rashid Dep. at 22:25-24:12 (discussing salary increases from $500 to $675 per week over the course of employment at Basera); *see also* Buzzard Decl. Exs. 9, 10 (Sample Paychecks). This is confirmed by Anil Kumar's testimony that service employees at both restaurants earned weekly salaries for six days of work.  (A. Kumar Dep. at 37:20-23, 43:17-21, 44:8-11, 63:14-16.)

"An employer is not exempt from paying overtime wages merely because it pays the employee a weekly salary."  *Amaya v. Superior Tile and Granite Corp.*, No. 10-cv-4525 (PGG), 2012 U.S. Dist. LEXIS 5246, at *22 (S.D.N.Y. Jan. 17, 2012).  "Under both the FLSA and NYLL, there is a presumption that such a weekly salary covers only the first forty hours, unless the parties intend and understand the weekly salary to include overtime hours at the premium rate."  *Perez v. Platinum Plaza 400 Cleaners, Inc.*, 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 54066, at *6 (S.D.N.Y. Apr. 24, 2015) (quotation marks and alterations omitted); *see also Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-cv-10234 (JLC), 2016 U.S. Dist. LEXIS 121259, at *20–21 (S.D.N.Y. Sept. 8, 2016) ("Unless the contracting parties intend and understand the weekly salary

---

[3] Crucially, even if a jury were to find that Defendants' gave Plaintiffs a two-hour break each day, Defendants would still be liable for overtime violations.  Anil Kumar testified that, with the break, employees at Indigo worked 9 hours per day, A. Kumar Dep. at 32:14-18, and employees at Basera worked 10 hours per day, *id.* at 63:12-13.  Thus, even using Defendants' schedules, employees worked 54 hours per week at Indigo and 60 hours per week at Basera.

to include overtime hours at the premium rate, courts understand the weekly salary to cover only the first 40 hours." (internal quotation marks omitted)); *Herrera v. 12 Water St. Gourmet Café*, No. 13-cv-4370 (RLE), 2016 U.S. Dist. LEXIS 25565, at *15–16 (S.D.N.Y. Feb. 29, 2016) (same).

Here, Defendants will be unable to overcome this presumption because the record is devoid of any evidence of "an explicit understanding between the employer and employee as to regular and overtime rates." *Amaya*, 2012 U.S. Dist. LEXIS 5246, at *22 ("An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and Labor Law if there is an explicit understanding between the employer and employee as to regular and overtime rates."). As a result, Plaintiffs are virtually certain to prevail on their overtime claims. The calculations of Defendants' potential liability on these claims are set forth in the margin based on the testimonial evidence cited above.[4]   The calculations assume that a jury would conclude

---

4

| Name | Year | Estimated weeks worked in Period | Weekly Salary | Regular Rate (Salary/40) | OT Rate (Regular Rate * 1.5) | OT Hours Worked Per Week | OT Wages Owed Per week | OT Wages Owed For Period | Totals |
|---|---|---|---|---|---|---|---|---|---|
| Prabir (Indigo) | 2015 | 36 | $433.00 | $10.83 | $16.24 | 26 | $422.18 | $15,198.30 | |
| | 2016 | 50 | $433.00 | $10.83 | $16.24 | 26 | $422.18 | $21,108.75 | |
| | 2017 | 16 | $433.00 | $10.83 | $16.24 | 26 | $422.18 | $6,754.80 | **$43,061.85** |
| Bhuyian (Basera) | 2014 | 50 | $550.00 | $13.75 | $20.63 | 26 | $536.25 | $26,812.50 | |
| | 2015 | 42 | $550.00 | $13.75 | $20.63 | 26 | $536.25 | $22,522.50 | **$49,335.00** |
| Rashid (Basera) | 2012 | 16 | $500.00 | $12.50 | $18.75 | 26 | $487.50 | $7,800.00 | |
| | 2013 | 50 | $550.00 | $13.75 | $20.63 | 26 | $536.25 | $26,812.50 | |
| | 2014 | 50 | $575.00 | $14.38 | $21.56 | 26 | $560.63 | $28,031.25 | |
| | 2015 | 50 | $600.00 | $15.00 | $22.50 | 26 | $585.00 | $29,250.00 | |
| | 2016 | 38 | $650.00 | $16.25 | $24.38 | 26 | $633.75 | $24,082.50 | |
| | 2017 | 16 | $675.00 | $16.88 | $25.31 | 26 | $658.13 | $10,530.00 | **$126,506.25** |
| | | | | | | | | TOTAL | **$218,903.10** |

Plaintiffs worked at least 26 overtime hours per week, which is in the middle of the range contained in Plaintiffs' testimony.   The salaries used for Plaintiffs Rashid and Bhuiyan are drawn from their deposition testimony set forth above.   The salary used for Plaintiff Prabir is an average of the amounts shown on the paychecks he was given that are in Plaintiffs' possession, as his weekly pay fluctuated the most.   *See* Buzzard Decl. ¶ 20, Ex. 11 (Prabir Paycheck Spreadsheet).

2.   Plaintiffs Will Succeed on the Merits of Their Remaining NYLL Claims

Plaintiffs will succeed on the merits of their remaining NYLL claims for violations of N.Y. Lab. Law § 195 and New York's "spread of hours" regulation.   First, under N.Y. Lab. Law § 195(3), employers are required to furnish employees with written statements accompanying every payment of wages listing, *inter alia*, the dates of work, rate of pay, gross wages, and net wages.   *See* N.Y. Lab. L. § 195(3).   Here, Rajath Kumar admitted that employees at Basera were never given any wage statements with his weekly pay.   (*See* Rajath Kumar Dep. at 58:16-59:13.) With respect to Indigo, although Rajath Kumar testified that employees at that restaurant received "pay stubs" with their weekly checks, *see id.* at 77:8-78:2, the documents he identified as the pay stubs do not contain all the information required by § 195(3), *see* Buzzard Decl., Ex. 12 (Documents Identified as "Paystubs").   Specifically, the "pay stubs" do not contain the employees' "rate of pay," information about whether the employee was "paid by the hour, shift, day, week [or] salary," or the "number of regular hours worked."   *See id.*   Accordingly, Defendants are liable for violating § 195(3).

Next, under N.Y. Lab. Law § 195(1), employers are required to give their employees a written notice "at the time of hiring" and prior to any changes in the employees' wages stating, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . ."   N.Y. Lab. Law § 195(1), (2).   Here, although Rajath

13

Kumar testified at his deposition that he "believe[d]" such notices were provided to Plaintiff Prabir, he further testified that he was not able to locate any written notices following a search.  (Rajath Kumar Dep. at 42:17-43:11.)  In any event, despite being asked to produce wage notices for all Plaintiffs, Defendants have not produced wage notices for any Plaintiff and discovery is now closed.  *See* Buzzard Decl. ¶¶ 6-8.  For purposes of this motion, the only "legitimate inference" to be drawn from Defendants' failure to produce any wage notices from the time of Plaintiffs' hiring or prior to any change in their wages is that Defendants did not provide such notices.

Because Defendants failed to provide Plaintiffs with wage notices and statements as required by N.Y. Lab. Law § 195, Plaintiffs will be entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198.  *See* N.Y. Lab. Law § 198(1-b) (authorizing recovery of statutory damages of $50 per work day the employee did not receive a wage notice, capped at $5,000), (1-d) (authorizing recovery of statutory damages of $250 per work day that employee did not receive a wage statement, capped at $5,000).  Given the length of Plaintiffs' employment with Defendants, *see supra* at 3-4, each Plaintiff will be entitled to recover the statutory maximum of $5,000 for each violation, for a total of $30,000.

Finally, under New York law, employers must pay employees in the hospitality and restaurant industry an extra hour's pay at the New York minimum wage when their "spread of hours" is more than 10 hours.  N.Y. Comp. Codes R. Regs., tit. 12, § 146-1.6.  "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday.  The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  *Id.*

Even relying on Defendants' testimony concerning the number of hours Plaintiffs worked, Defendants are liable for spread of hours violations.  Defendant Anil Kumar unequivocally testified that employees at Indigo work from 11:00am to 10:00pm with a two-hour break, for a

14

"spread" of 11 hours.  (A. Kumar Dep. at 42:14-18.)  He also testified that employees at Basera

work from 11:00am to 11:00pm with a two-hour break, for a "spread" of 12 hours.  (*Id.* at 63:12-

13.)  The purported payroll records Defendants have produced for all three Plaintiffs do not contain

any indication that Plaintiffs were paid spread of hours pay.  *See* Buzzard Decl., Exs. 8 (Bhuiyan

Payroll), 12 (Prabir Payroll), 13 (Rashid Payroll).  Further, as noted above, Anil Kumar testified

that servers generally worked six days per week and were paid flat weekly salaries.  (A. Kumar

Dep. at 37:20-23, 43:17-21, 44:8-11, 63:14-16.)   It is thus more likely than not Plaintiffs will

prevail on their spread of hours claims.  As set forth in the margin, Plaintiffs estimate that

Defendants will be liable for approximately $21,519.00 in unpaid compensatory spread of hours

damages based on the above testimony.[5]

---

5

| Name | Year | Estimated Weeks worked in Period | Days Worked Per Week | NY Minimum Wage | Spread of Hours Wages Owed Per Week (6 hours) | Spread of Hours Wages Owed For period | Totals |
|------|------|------|------|------|------|------|------|
| Prabir | 2015 | 36 | 6 | $8.75 | $52.50 | $1,890.00 | |
| | 2016 | 50 | 6 | $9.00 | $54.00 | $2,700.00 | |
| | 2017 | 16 | 6 | $11.00 | $66.00 | $1,056.00 | **$5,646.00** |
| Bhuyian | 2014 | 50 | 6 | $8.00 | $48.00 | $2,400.00 | |
| | 2015 | 42 | 6 | $8.75 | $52.50 | $2,205.00 | **$4,605.00** |
| Rashid | 2012 | 16 | 6 | $7.25 | $43.50 | $696.00 | |
| | 2013 | 50 | 6 | $7.25 | $43.50 | $2,175.00 | |
| | 2014 | 50 | 6 | $8.00 | $48.00 | $2,400.00 | |
| | 2015 | 50 | 6 | $8.75 | $52.50 | $2,625.00 | |
| | 2016 | 38 | 6 | $9.00 | $54.00 | $2,052.00 | |
| | 2017 | 20 | 6 | $11.00 | $66.00 | $1,320.00 | **$11,268.00** |
| | | | | | | **TOTAL** | **$21,519.00** |

**C.     Plaintiffs' Evidence Demonstrates Defendants' Intent to Defraud or Frustrate the Enforcement of a Judgment in this Action**

Having demonstrated their likelihood of success on the merits, Plaintiffs must show that "one or more grounds for attachment provided in [C.P.L.R.] section 6201 exist." N.Y. C.P.L.R. § 6212(a). Plaintiffs seek attachment under C.P.L.R. § 6201(3), which permits attachment when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." To establish this ground for attachment, Plaintiffs must demonstrate "both that the defendant (1) has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of these acts; and (2) has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor." *DLJ Mortg. Capital, Inc.*, 594 F. Supp. 2d at 319.

"In the context of a motion for an attachment, fraud is not lightly inferred, and the moving party must establish fraudulent intent with evidentiary facts, not conclusory allegations." *JSC Foreign Econ. Ass'n Technostroyexport*, 306 F. Supp. 2d at 487. The evidence submitted in support of the motion must do more than "merely raise suspicions of fraudulent intent; rather, it must appear that such fraudulent intent really existed in the defendant's mind." *Id.* (quotation marks omitted). Because "fraudulent intent is rarely susceptible to direct proof, courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-cv-5345 (AJN), 2016 U.S. Dist. LEXIS 82821, at *33-34 (S.D.N.Y. June 24, 2016). The badges of fraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to

16

be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* at *34 (citation omitted).

Here, Plaintiffs have presented direct evidence of Defendants' intent to "frustrate the enforcement of a judgment that might be rendered in plaintiff's favor" by "encumber[ing]" and "dispos[ing]" of assets.  Opt-In Plaintiff Sydur Rashid, who joined this action in November 2017, has submitted a sworn affidavit dated December 22, 2017 in which he testifies that Defendant Anil Kumar told him in late August 2017 that "he was selling Indigo and was trying to transfer his accounts to some other relatives so that he could 'show the court that he had no money to pay [Named Plaintiff] Prabir."  Affidavit of Rashid Sydur ("Rashid Aff.") ¶¶ 14-15.  Several months later, in November 2017, Anil Kumar told Plaintiff that "he would rather die than pay Mr. Prabir any money in this case." *Id.* ¶ 19.  Anil Kumar's sentiments were echoed in statements made to Mr. Rashid by other members of the Kumar family.  Rajath Kumar, Anil Kumar's nephew and the general manager of Basera, told Mr. Rashid in the beginning of August 2017 that "Anil Kumar and his wife, Renu Kumar[,] were planning to transfer their assets to someone else's name so that they would not have pay Mr. Prabir." *Id.* ¶ 11.  He reiterated that statement in October 2017, telling Mr. Rashid that "'they' were trying to sell some businesses and were trying to transfer assets to other people." *Id.* ¶ 17.  Rajani Rani, Anil Kumar's niece, told Mr. Rashid in September 2017 that Indigo had been sold "so that her uncle did not have to pay Mr. Prabir." *Id.* ¶ 16.

Defendants' stated intent to encumber and transfer their assets is borne out by other evidentiary facts.  First, according to recording documents filed with the New York City Department of Finance, Defendant Renu Kumar and Sunita Rani Paul (Anil Kumar's sister-in-law

17

and the mother of Rajath Kumar and Rajani Rani) obtained in October 2017 a Credit Line Mortgage on the Kumar family home located at 83-11 262nd Street, Glen Oaks, NY 11004 (the "Property").[6]  (*See* Buzzard Decl. ¶ 20 & Ex. 14 (Mortgage Recording Documents); A. Kumar Dep. at 4:14-16 (acknowledging residence at "8311 262 Street, Floral Park, 11004"), 72:19-73:18 (describing the family relationship with Sunita Rani Paul); Buzzard Decl., Ex. 3 (Deposition of Renu Kumar ("Renu Kumar Dep.")) at 4:14-16 (acknowledging residence at "8311 262 Street, Floral Park, 11004"); Buzzard Decl. Ex. 4 (Deposition of Rajani Rani ("Rani Dep.")) at 4:9-11 (acknowledging residence at "8311 262 Street, Floral Park, 11004").)[7]  The Credit Line Mortgage uses the Property as security to obtain a credit line of $320,800.00. (Buzzard Decl., Ex. 20 (Mortgage Recording Documents) at 1-2.)  It is signed by Renu Kumar, and is initialed on each page with the initials "RK" and "AK," which is presumably Anil Kumar.  *See id.*

Next, consistent with what Defendants told Mr. Rashid, Indigo was offered for sale for $180,000 in approximately June 2017.  (*See* Buzzard Decl. ¶¶ 25-26 & Exs. 16 (Loopnet.com Listing) (showing that listing was created on "06/17/2017"), 17 (Realtor.com Listing).)  The timing of this of this offering (approximately one month after Mr. Prabir filed the Complaint in this action), reinforces Defendants' fraudulent intent.  *See N.Y. Dist. Council of Carpenters Pension Fund*, 2008 U.S. Dist. LEXIS 40517, at *16-17 (listing as a reason for finding fraudulent intent that "shortly before or after the commencement of this action, [the defendant] began to offer for

---

[6] The deed to the Property is in the name of Renu Kumar and Sunita Rani Paul.  *See* Buzzard Decl., Ex. 15 (Deed).  It indicates that the Property was purchased in October 2011 for a price of $525,000.  *See id.* at 8.

[7] Although the official address on the mortgage document is listed as "83-11 262nd Street, Glen Oaks, NY 11004," Schedule A of that document states that the "assessed address" of the property is "83-11 262 Street, Floral Park, NY 11004."  *See* Buzzard Decl., Ex. 14 at Schedule A.

sale a property that was previously purchased . . . by another corporation owned and controlled by [the defendant]").

More suggestive of fraudulent intent is Anil Kumar's deposition testimony.  While Anil Kumar acknowledged in his January 25, 2018 deposition that Indigo was for sale, he expressly testified that Defendants were "unable to sell it." (A. Kumar Dep. at 54:8-55:2.)  He also explicitly denied that there "were any plans to close the restaurant." (*Id.* at 54:4-7.)  Yet less than two weeks later, when Plaintiff Rashid visited Indigo on February 5, 2018, he found that the "windows of the restaurant had been covered in paper" and that the restaurant was being renovated.  (Declaration of Sydur Rashid Dated February 7, 2018 ("Rashid Decl.") ¶¶ 2-3.)  Plaintiff Rashid spoke with one of the men working on the restaurant, who told him that Indigo had been closed for "a little while," that there was "another owner" who was Japanese, and that "there was a Japanese restaurant going in to that location." *Id.* ¶ 5.  It is perhaps theoretically possible that there were no plans to close the restaurant when Anil Kumar testified on January 25, and that the closure and transfer occurred so swiftly that the new owner was already renovating the restaurant 10 days later.  But this seems highly improbable.  The more "legitimate inference" to be drawn from these facts is that Anil Kumar knew when he testified at deposition that there *were* plans to close the restaurant and deliberately proffered deceptive testimony.

In sum, Plaintiffs have submitted evidence demonstrating that both requirements of § 6201(3) have been met.  First, Defendants "disposed of" some property (Indigo) and "encumbered" other property (their family home).  Second, Defendants had the "requisite actual intent" to sell or transfer their assets to "frustrate the enforcement of a judgment" in this action, as shown by the statements of Anil Kumar and his family to Plaintiff Rashid, the timing of when Indigo was offered for sale and the mortgage was obtained on the Property, and Anil Kumar's

highly questionable deposition testimony.  That Defendants intend to rely on these asset transfers (and presumably others of which Plaintiffs are currently unaware) to avoid the satisfaction of a judgment in this action is further demonstrated by an email sent to Plaintiffs' counsel the week before this attachment motion was filed.

> **D.     Attachment is Necessary because Defendants are Deliberately Rendering Themselves Judgment Proof.**

On February 8, 2018, Defendants' counsel informed Plaintiffs' counsel that Defendants were willing to settle this case only for a "nominal sum" because Defendants "claim" Anil Kumar is "eligible for bankruptcy and will file if necessary" and "believe that plaintiffs will not be able to collect on any judgment that may be awarded" because, *inter alia*, Indigo has closed.   (Buzzard Decl., Ex. 18 (Email).)  Thus, despite the above evidence demonstrating that they obtained a line of credit worth over $300,000 in late October 2017 and recently sold Indigo, Defendants now assert that Plaintiffs will be unable to collect on any judgment.  The only "legitimate inference" to draw from these facts is that Defendants are doing exactly what they told Plaintiff Rashid they would do—transfer their assets to others and sell their businesses to escape from paying a judgment in this lawsuit.  This evidence is more than sufficient to establish Plaintiffs' need for the attachment. *See, e.g.*, *Shah v. Comm. Bank "Ob'Edinennyi Investitsionny Bank"*, No. 09-cv-6121 (HB), 2010 U.S. Dist. LEXIS 19717, at *10 (S.D.N.Y. Mar. 3, 2010) ("Both state and federal courts in New York have found sufficient evidence that an award may be ineffectual and an attachment needed where the Petitioner demonstrates Respondents' potential insolvency [or] deliberate liquidation and/or transference of assets to another . . . ." (internal citations omitted)).

> **E.     The Amount Demanded Exceeds all Known Counterclaims**

N.Y. C.P.L.R. § 6212(a) requires that a party seeking attachment allege in its supporting affidavits that "the amount demanded from the defendant exceeds all counterclaims known to the

plaintiff." Here, Plaintiffs are seeking attachment of property and debts owed to Defendants in an amount valued up to $515,819, which represents the total estimated compensatory damages and penalties for which Defendants will likely be liable following a trial.[8] Defendants have no known counterclaims of which Plaintiffs are aware. *See* Buzzard Decl. ¶ 4. As such, this statutory requirement of Section 6212(a) has been met.

### F.      Plaintiffs Will Provide an Undertaking

If the Court grants Plaintiffs' attachment motion, Plaintiffs will provide an undertaking in a total amount fixed by the Court as required by N.Y. C.P.L.R § 6212(b). (*See* Buzzard Decl. ¶ 9.) "On a motion for an order of attachment," plaintiffs are required to "give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars . . . ." N.Y. C.P.L.R. § 6212(b). Here, Plaintiffs request an undertaking of $2,000 for the attachment of up to $515,819 in assets (or 0.39% of the assets sought). The requested undertaking, when calculated as a percentage of the total assets to be attached, is similar to the amounts fixed by courts under § 6212(b) in other attachment cases. *See, e.g.*, *Hill v. Ameritax, Inc.*, No. 16959/12, 2012 N.Y. Misc. LEXIS 5061, at *5-6 (N.Y. Sup. Ct. Oct. 17, 2012) (ordering an undertaking of $500 to secure attachment of $125,000, or 0.4% of assets); *In re Amaranth Natural Gas Commodities Litig*., 711 F. Supp. 2d 301, 313 (S.D.N.Y. 2010) (ordering plaintiffs to post an undertaking of $250,000 to secure attachment of $72.4 million in assets, or "approximately 0.35 percent of the attachment"); *Garden City Irrigation, Inc., v. Donna Salamanca*, No. 13304-04, 801 N.Y.S.2d 234 (table), 2005 N.Y. Misc. LEXIS 784 (N.Y. Sup. Ct. Apr. 18, 2005) (ordering an undertaking of $500 where plaintiff

---

[8]

| Tip Misappropriation | Overtime | NYLL 195 Violations | Spread of Hours | Total |
|---|---|---|---|---|
| $245,397.00 | $218,903.00 | $30,000.00 | $21,519.00 | **$515,819.00** |

sought attachment $150,000, or 0.33%); *see also Hertzi v. Ateliers de la Haute-Garonne*, No. 15-cv-7702 (RJS), 2015 U.S. Dist. LEXIS 165258, at *10 (S.D.N.Y. Oct. 13, 2015) (ordering undertaking of $10,000 for attachment of assets up to $1.5 million, or 0.66%).   Moreover, this amount of undertaking is reasonable given the strength of Plaintiffs' claims on the merits.

### G.     The Court Should Permit Plaintiffs to Conduct Discovery of Defendants' Assets

If the Court grants Plaintiffs' motion for attachment, Plaintiffs respectfully request that the Court allow Plaintiffs to conduct discovery geared at locating Defendants' assets that may be subject to attachment.   The C.P.L.R. provides that "at any time after the granting of an order of attachment and prior to the final judgment in the action . . . the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant."   N.Y. C.P.L.R. § 6220.   "'[T]he existence of a valid order of attachment is a mandate for a Sheriff to levy upon assets of a party.   So long as the order is outstanding and unsatisfied, a plaintiff is entitled to learn of assets to enable a Sheriff to seize sufficient property to comply with the order.'"   *Etalon Imob S.R.L. v. Schoenbach*, No. 12-cv-6868 (BSJ), 2012 U.S. Dist. LEXIS 144005, at *17-18 (S.D.N.Y. Oct. 3, 2012) (quoting *Heller Financial, Inc. v. Wall Street Imports, Ltd.*, 529 N.Y.S.2d 969, 970-71 (N.Y. Sup. Ct. 1988)).   Here, Plaintiffs seek to propound discovery requests and depose Defendants concerning the existence and location of assets that may be subject to attachment.   As this discovery would be directed only at the existence and location of assets, it would not interfere with the litigation of the merits of Plaintiffs' claims or any briefing or trial schedule the Court sets in that regard.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their application for a prejudgment attachment be granted in its entirety, and that this Court issue an order of attachment

attaching debts owed to and property of Defendants located in the State of New York, valued at up to $505,819 and to appoint the U.S. Marshal for the Southern District of New York, or any other person appointed to act in his place, for the purpose of serving the Order of attachment and effecting the levy.  Plaintiffs will thereafter move for confirmation of the order pursuant to the requirements of the C.P.L.R.

Dated:  New York, New York
         February 16, 2018

                                        Respectfully submitted,

                                        By: /s/ *Lucas C. Buzzard*
                                        D. Maimon Kirschenbaum
                                        Lucas C. Buzzard
                                        JOSEPH & KIRSCHENBAUM LLP
                                        32 Broadway, Suite 601
                                        New York, NY  10004
                                        (212) 688-5640

                                        *Attorneys for Plaintiffs*