**JOSEPH & KIRSCHENBAUM LLP**
Attorneys at Law

Charles Joseph                                    32 Broadway, Suite 601
D. Maimon Kirschenbaum                                New York, NY 10004
Denise Schulman                                    Phone (212) 688-5640
Josef Nussbaum                                       Fax (212) 688-2548
Lucas C. Buzzard                                        www.jk-llp.com

November 2, 2018

**VIA ECF**

Hon. Alison Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

                    Re:    *Prabir v. Bukhara Indian Cuisine, Inc., et al.*
                           No.:  17-cv-3704

Dear Judge Nathan:

      We represent Named Plaintiff Samuel Prabir and Opt-in Plaintiffs Mustafa Bhuiyan and Sydur Rashid in the above referenced action. I write to respectfully request that the Court approve the parties' settlement of this Fair Labor Standards Act ("FLSA") case as fair and reasonable and so order the parties' stipulation of dismissal with prejudice. The parties' executed settlement agreement is submitted herewith as Exhibit 1.

      Plaintiffs are former service employees (servers and/or food runners) at Defendants' two Indian restaurants—Basera Restaurant ("Basera") and Indigo Indian Bistro ("Indigo"). The Complaint in this case alleges claims of unpaid wages under the FLSA and New York Labor Law ("NYLL"). The Complaint alleges that Defendants: (1) paid Plaintiffs a flat weekly salary and failed to pay the minimum wage or overtime wages for all hours worked over 40 per week; (2) failed to pay New York's "spread of hours" premium; (3) misappropriated gratuities, in violation of N.Y. Lab. Law § 196-d; and (4) failed to provide the wage notices and wage statements as required by N.Y. Lab. Law § 195. In September 2018, following several weeks of negotiations between counsel, the parties agreed to settle this case for a total of $130,000.

      This settlement is fair and reasonable and should be approved. *See generally Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). A major issue Plaintiffs have faced throughout the course of litigating this case has been Defendants' inability to pay a judgment in this matter, coupled with their continued efforts to hide and dissipate their remaining assets to avoid paying any amount. For example, in February 2018, after successfully obtaining preliminary certification of an FLSA collective, Plaintiffs requested that Judge Nathan decertify that collective because Plaintiffs had learned from discussions during a settlement conference that Defendants would be "unable to fund a settlement or judgment of even a fraction of the damages owed to the three existing Plaintiffs, much less a collective." *See* ECF No. 51 at 1.

      That same month, Plaintiffs moved for an order of pre-judgment attachment based on evidence that Defendants were in the process of transferring their assets to family members, had

taken a credit line mortgage out on their home, and had sold one of their restaurants (Indigo) in order to frustrate a judgment in this action.  *See* ECF Nos. 45-49.  Judge Nathan granted that motion in June 2018, adopting Your Honor's recommendation, following a one-day evidentiary hearing, that the motion be granted.  *See* ECF Nos. 78, 84, 103.  In the interim, the Judge Nathan granted Plaintiffs' request for further discovery of Defendants assets and a temporary restraining order preventing Defendants from transferring their assets while it considered Your Honor's Report and Recommendation.  *See* ECF No. 96.  The asset discovery revealed that: (1) the Individual Defendants had practically no liquid assets; (2) the monies the Individual Defendants had received from the credit-line mortgage taken on their home had been transferred to their non-party son; (3) Defendants had for months failed to pay the rent for their only restaurant that remained in operation (Basera), resulting in unpaid rent of over $350,000; (4) the landlord had initiated eviction proceedings for that restaurant; and (5) the corporate Defendant that owned the remaining restaurant owed the State of New York some $87,000 in unpaid taxes.  *See* Ex. 2 (Documents detailing unpaid rent and unpaid taxes).

In an effort to preserve assets to fund a judgment in this matter, Plaintiffs instituted a separate proceeding in New York State court in early August 2018, asserting state law claims of fraudulent conveyance against the Defendants and family members of the Individual Defendants to whom assets had been transferred during the course of this litigation.  *See* ECF No. 108-3 (State Court Complaint).  Plaintiffs also successfully moved in this Court to compel further depositions of Defendants to ascertain the location and extent of any remaining assets.  *See* ECF Nos. 108, 112.

In late August 2018, after several weeks of negotiations, the parties agreed to settle this matter for $130,000.  To protect Plaintiffs, Plaintiffs' counsel insisted that the entirety of that amount be transferred into the escrow account of Plaintiffs' counsel before any application would be made to approve the settlement.  *See* Ex. 1 (Settlement Agreement) ¶ 3.  The full amount has now been deposited into the escrow account, where it will remain until this Court approves the settlement in this matter.

The serious collectability issues presented in this case justify the settlement amount.  As may be seen from the attached damages calculation, Plaintiffs estimate their maximum possible recovery in this case at approximately $510,000.  *See* Ex. 3 (Damages Calculation).  The $130,000 settlement is thus approximately 25% of Plaintiffs' maximum possible recovery.  This is a reasonable settlement given (a) the lack of liquid assets, (b) Defendants' proven dissipation of their to avoid payment of a judgment in this matter, and (c) the extent of Defendants' debts for rent and unpaid taxes.  The simple truth is that although Plaintiffs are confident of the strength of their wage claims, Plaintiffs would likely spend years after obtaining a favorable judgment in this matter attempting to ferret out Defendants' remaining assets and unwind their transfers, all with no guarantee of success.  In light of these serious risks, it is more than reasonable for Plaintiffs to accept a sum-certain settlement now.  *See Villanueva v. 179 Third Avenue Rest. Inc.*, No. 16-cv-8782 (AJN), 2018 U.S. Dist. LEXIS 116379, at *5 (S.D.N.Y. July 12, 2018) ("*Villanueva I*") ("Obstacles to collection may justify a reasonable settlement for an amount less than the maximum amount Plaintiffs might have recovered otherwise."); *Villanueva v. 179 Third Ave. Rest. Inc.*, No. 16-cv-8782 (AJN), 2018 U.S. Dist. LEXIS 146447, at *4-5 (S.D.N.Y. Aug. 28, 2018) ("*Villanueva II*") (approving settlement amount representing "less than six percent of

the maximum recovery" where there was evidence that recovery was "very unlikely due to [defendant's] financial constraints"); *see also Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

Further, the settlement was the product of extensive arms-length negotiations between counsel for the parties conducted over the course of weeks with the benefit of extensive discovery. The settlement agreement itself does not contain any confidentiality provisions, although it does contain a mutual non-disparagement provision under which both parties agree not to make any statements portraying the other in an unfavorable light. *See* Ex. 1 ¶ 7. Crucially, the non-disparagement provision does not prevent either party from "making truthful statements about this litigation." *Id.* ¶ 7(c). In addition, as further consideration for the mutual non-disparagement provision, Defendants have agreed to provide Plaintiffs with neutral references. As such, the mutual non-disparagement provision should be approved. *See Velandia v. Serendipity 3, Inc.*, No. 16-cv-1799 (AJN), 2018 U.S. Dist. LEXIS 116594, at *11-12 (S.D.N.Y. July 12, 2018) (approving a mutual non-disparagement provision that expressly provided that "both parties can discuss the litigation")

Moreover, the agreement does not contain any broad, one-sided releases. Plaintiffs have agreed to release Defendants only from existing: (1) wage-related claims that were or could have been raised in the Complaint in this action; and (2) claims of fraudulent conveyance arising from this action that were or could have been asserted in Plaintiffs' New York State court action. Ex. 1 ¶ 4(a). This release is narrowly tailored to the claims arising in or from this action. Further, it is also supported by consideration in the form of Defendants' release of Plaintiffs from all claims, known and unknown, arising out of any aspect of their employment with Defendants, any agreement concerning such employment, or the cessation of that employment. *Id.* ¶ 4(b). Accordingly, the release provision does not impermissibly "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (internal quotation marks omitted).

Finally, the settlement provides for reasonable attorneys' fees and costs to Plaintiffs' counsel. Pursuant to the Plaintiffs' contingency fee engagement agreement in this matter, Plaintiffs' counsel is entitled to request out of the total recovery one-third in attorneys' fees and recovery of costs. Here, Plaintiffs' counsel will receive a total of $43,300 as attorneys' fees and costs. This amount is just under one-third of the $130,000 settlement and does not separately take into account the nearly $6,000 in costs Plaintiffs' counsel has incurred to litigate this matter.[1] Thus, the proposed fee award should be approved because it is significantly more beneficial to Plaintiffs than both (a) Plaintiffs' actually agreed-upon fee arrangement, and (b) fee arrangements that are routinely approved in FLSA settlements in this Circuit. *See, e.g.*, *Villanueva I*, 2018 U.S. Dist. LEXIS 116379, at *7-8.

---

[1] As may be seen from Plaintiff's expense records, attached hereto as Exhibit 5, Plaintiffs' counsel has incurred the following costs: (1) the $400 filing fee; (2) $1,956.06 in expenses incurred in serving the Complaint in this action, the complaint in the State Court action, subpoenas, and the order of attachment; (3) $3,369.00 in deposition/hearing transcript expenses; and (4) $278.60 in airfare to fly one of the Plaintiffs in for his deposition.

A "lodestar" crosscheck supports the reasonableness of the requested fee amount in this case. As can be seen from counsel's contemporaneous records attached as Exhibit 4, counsel's lodestar amount totals over $62,000.00.[2] This amount reflects a reasonable number of hours spent on this matter, which involved: (1) full document and deposition discovery; (2) a successful motion for preliminary collective certification; (3) a successful motion for pre-judgment attachment (which included full briefing and a full-day evidentiary hearing before Magistrate Judge Pitman), (4) successfully obtaining a temporary restraining order to prevent Defendants from transferring assets while Judge Pitman's Report and Recommendation as to the attachment motion was under review by this Court; (5) conducting further discovery of Defendants' assets that may be subject to pre-judgment attachment; (6) opposing Defendants' motion for partial summary judgment; (7) drafting and filing a separate complaint in New York State court alleging claims of fraudulent conveyance in a further effort to prevent the dissipation of Defendants' assets; and (8) extensive settlement negotiations.[3] In addition, the $43,000 allocated to Plaintiffs' counsel in the settlement agreement amounts to only 0.69 of this lodestar amount (even without taking into account costs incurred by Plaintiffs' counsel). Because this lodestar multiplier is less than one, this Court should find the "fees presumptively reasonable" and "need not assess the reasonableness of the rates charged." *Villanueva I*, 2018 U.S. Dist. LEXIS 116379, at 8.

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the parties' settlement, so order the stipulation of dismissal, and retain jurisdiction to enforce the terms of the settlement agreement. We thank the Court for its attention to this matter.

                          Respectfully submitted,

                          */s/ Lucas C. Buzzard*
                          Lucas C. Buzzard

cc: Defendants' counsel (via ECF).

---

[2] Counsel's time records have been edited to remove duplicate entries or purely clerical tasks.

[3] Counsel's lodestar includes the hours spent on this approval letter and fee application. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03-cv-1548 (GBD) (AJP), 2008 U.S. Dist. LEXIS 82085, at *51 (S.D.N.Y. Oct. 17, 2008) (finding plaintiff was "entitled to legal fees for the preparation of its fee application").