```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
SAMUEL PRABIR, MUSTAFA JAMAL        :
BHUIYAN and SYDUR RASHID,
                                    :
                 Plaintiffs,            17 Civ. 3704 (HBP)
                                    :
     -against-                          OPINION
                                    :   AND ORDER
BUKHARA INDIAN CUISINE, INC.,
d/b/a "Indigo Indian Bistro,"       :
BASER INDIAN CUISINE, INC.,
d/b/a "Baser Restaurant,"           :
ANIL KUMAR and RENU KUMAR,
                                    :
                 Defendants.
                                    :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 3/12/19

PITMAN, United States Magistrate Judge:

This matter is before me for review of the parties' settlement agreement in this action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. and the New York Labor Law ("NYLL"). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the settlement is approved.

Plaintiffs formerly worked as servers and/or food runners at two restaurants allegedly owned and operated by the individual defendants. Plaintiffs allege that defendants (1) paid them a flat weekly salary regardless of the number of hours they worked, (2) failed to pay the minium wage and overtime premium pay for all hours worked in excess of 40 hours per week, (3) failed to pay "spread of hours" pay as required by the NYLL,

(4) misappropriated gratuities and (5) failed to provide the wage statements and wage notices require by the NYLL. Exclusive of liquidated damages, interest and statutory penalties, the parties claim the following amounts:

| Plaintiff | Amount Claimed | Pro Rata Percentage of Total Amount Claimed |
|---|---|---|
| Prabir | $74,648.00 | 31% |
| Bhuiyan | $46,026.25 | 19% |
| Rashid | $119,566.00 | 49.8% |

The parties have reached an agreement to settle all claims of all plaintiffs against all defendants for the total sum of $130,000.00. $43,000.00, or slightly less than one-third, will be paid to plaintiffs' counsel as reimbursement for out-of-pocket costs and fees.[1] The parties have agreed to allocate the remainder of $87,000.00 as follows:

| Plaintiff | Amount | Pro Rata Percentage of Net Settlement Amount |
|---|---|---|
| Prabir | $36,000.00 | 41.3% |
| Bhuiyan | $14,000.00 | 42.5% |
| Rashid | $37,000.00 | 16% |

This action has been marked by continuing efforts on the part of defendants to dissipate and/or hide their assets. In

---

[1] Counsel has reported that their out-of-pocket costs total $6,003.66, made up primarily of the filing fee, service fees and transcript fees. Subtracting this sum from $43,000.00 yields a remainder of $36,996.34 -- approximately 28.5% of the gross settlement figure.

February 2018 plaintiffs sought and ultimately obtained a pre-judgement order of attachment on the theory that defendants "with the intent to defraud [their] creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff[s'] favor, ha[ve] assigned, disposed of, encumbered, or secreted property, or removed it from the state or [are] about to do [so]." Pabir v. Bukhara Indian Cuisine, Inc., 17 Civ. 3704 (AJN)(HBP), 2018 WL 2709231 at *2 (S.D.N.Y. May 17, 2018) (Report & Recommendation), adopted at, 2018 WL 2694435 (S.D.N.Y. June 5, 2018). The evidenced adduced at the hearing on the motion for an order of attachment demonstrated that defendants were transferring, encumbering and selling assets, all in an effort to frustrate a judgment. Discovery conducted by plaintiffs has also disclosed that defendants failed to pay rent for one of their restaurants for several months, resulting in a debt of $350,000.00 and that defendants owe the State of New York $87,000.00 in unpaid taxes. Defendants efforts to evade their creditors have been so extensive that plaintiffs here were compelled to commence an action in state court asserting fraudulent conveyance claims against the defendants and their family members.

The money to fund the proposed settlement in this matter has already been paid to plaintiffs' counsel and is being held in escrow pending my approval of the settlement.

> Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of

3

> contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376 at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

4

First, the net settlement amount represents approximately 36% of plaintiffs' claimed unpaid minimum wage and overtime pay. Plaintiffs' case appears to rest entirely on their own testimony. As discussed in more detail below, given the risks plaintiffs would face if the case proceeded to trial, the settlement amount is reasonable. See Redwood v. Cassway Contracting Corp., 16 Civ. 3502 (HBP), 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); Felix v. Breakroom Burgers & Tacos, 15 Civ. 3531 (PAE), 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

The allocation of the net settlement proceeds is slightly troubling but not sufficiently so as to warrant rejection of the settlement. Although plaintiff Prabir's wage claim constitutes 31% of the total amount sought by plaintiffs for unpaid wages and overtime, he will receive 41.3% of the net settlement amount. This premium is permissible given that Prabir commenced this action and the remaining two plaintiffs are opt-ins. I conclude that it is reasonable for Prabir to receive a premium for his initiative in commencing this action.

Second, the settlement will entirely avoid the expense and aggravation of litigation and the problems of collection. As described above, defendants have engaged in repeated fraudulent

5

transfers and similar acts with the intent of frustrating the collection of any judgment that might be entered in this matter. Plaintiffs' counsel has vigorously and successfully taken steps to counteract defendants' strategy. Although a defendant should not be rewarded -- through a more modest settlement -- for attempting to frustrate creditors, chasing assets and unwinding fraudulent transfers takes time and costs money. Given the laudable zeal plaintiffs' counsel has exhibited throughout these proceedings, I have no reason to second guess his conclusion that $130,000.00 is a reasonable compromise and is a figure close to what the plaintiffs would actually realize were the case to continue. See Lliguichuzhca v. Cinema 60, LLC, supra, 948 F. Supp. 2d at 365 (collecting cases) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

Third, the settlement will enable plaintiffs to avoid the risk of litigation. To prevail at trial, plaintiffs will bear the burden of proving the number of hours that each worked and how much each was paid. Given plaintiffs' apparent inability to identify any corroborating evidence and their interest in the outcome, there is a non-trivial risk that a fact finder may not entirely credit plaintiffs' testimony. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in

assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted at, 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, there is no evidence that the settlement is anything other than the product of arm's-length bargaining between experienced counsel.

Fifth, there is no evidence suggesting fraud.

I also note that the settlement does not contain any provisions that have been criticized in this Circuit. Plaintiffs' release is limited to wage and hour and fraudulent conveyance claims. See Redwood v. Cassway Contracting Corp., supra, 2017 WL 4764486 at *3 (release of defendants "from any and all wage and hour and/or notice claims" that could have been brought permissible "because it is limited to claims relating to wage and hour issues"); Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at *3 (S.D.N.Y. Apr. 28, 2017) (Pitman, M.J.) (release

that is "narrowly-tailored to plaintiffs' wage-and-hour claims" permissible); see also Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at *1, *3 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.); Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at *3-*4 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.). The agreement's mutual non-disparagement clause has a carve-out for truthful statements about the litigation; the overwhelming weight of authority has approved such provisions. E.g., Montenegro v. NMN Food LLC, 18 Civ. 3153 (RA), 2018 WL 6618372 at *2 (S.D.N.Y. Dec. 18, 2018) (Abrams, D.J.); Zhi Li Zhong v. Rockledge Bus Tour Inc., 18 Civ. 454 (RA), 2018 WL 3733951 at *3 (S.D.N.Y. Aug. 6, 2018) (Abrams, D.J.); Elamrani v. Henry Limousine, Ltd., 15 CV 2050 (CLP), 2018 WL 3518505 at *3 (E.D.N.Y. July 19, 2018); Velandia v. Serendipity 3, Inc., 16 Civ. 1799 (AJN), 2018 WL 3418776 at *3-*4 (S.D.N.Y. July 12, 2018) (Nathan, D.J.); Gomez v. Midwood Lumber & Millwork, Inc., 17-CV-3064 (KAM)(JO), 2018 WL 3019877 at *6 (E.D.N.Y. June 17, 2018).

Finally, the settlement agreement's fee provision is clearly reasonable. The settlement agreement provides that slightly less than one-third of the gross settlement amount will be paid to counsel as both a fee and reimbursement for more than $6,000.00 of out-of-pocket costs. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v.

EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.).

Accordingly, for all the foregoing reasons, I approve the parties' settlement agreement. The Clerk of the Court is respectfully requested to mark this matter closed, and the

pending motion for summary judgment seeking dismissal of the claims against Renu Kumar (Docket Item 64) is denied as moot.

Dated:  New York, New York
        March 12, 2019

SO ORDERED

/s/ Henry Pitman
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel